United States District Court
Southern District of Texas
FILED

OCT 1 9 2000

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARK CRAWFORD, | § | |
|       *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | B-00-151 |
| BRUCE CHRISTIAN, in his Individual and | § | (JURY REQUESTED) |
| Official Capacities and | § | |
| SHARYLAND INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
|       *Defendants.* | § | |

## DEFENDANTS' RULE 12(b)(6) MOTION FOR PARTIAL DISMISSAL

TO THE HONORABLE U.S. DISTRICT COURT:

COME NOW Bruce Christian, individually and in his official capacity, and Sharyland Independent School District, Defendants, and file this their Rule 12(b)(6) Motion for Partial Dismissal and would respectfully show unto the Court the following:

### I.
### STATEMENT OF THE CASE

Plaintiff, Mark Crawford, a former student of the Sharyland Independent School District (the "School District"), brings this corporal punishment suit against Defendants, Bruce Christian, individually and in his official capacity, and the School District, alleging claims under 42 U.S.C. § 1983, for common law assault and battery, and for negligence.

Plaintiff's claims arise from the alleged paddling of Plaintiff on September 23, 1997. Plaintiff alleges that Defendant Christian, a School District employee, improperly paddled Plaintiff, striking Plaintiff on the back rather than on the buttocks and thereby causing Plaintiff severe back injuries, including herniated discs. (Ex. A at 2.) Plaintiff alleges that his parents did not consent to

**PAGE 1**

use of corporal punishment on Plaintiff.  (Ex. A at 2.)  Plaintiff further alleges that the School

District "had a policy, practice, and/or custom of paddling students," that Defendant Christian "did

not receive proper training in how to paddle a student," and that Defendant Christian "had

improperly hit other children on the back . . . [but] received no reprimand or instruction on proper

paddling techniques."  (Ex. A at 2.)

Defendants have asserted their entitlement to sovereign immunity and to all the defenses and

limitations set forth in the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE ANN. ch. 101

(Vernon 2000).  (Ex. B.)  In addition, Defendants have asserted their entitlement to qualified and/or

official immunity.  (Ex. B.)  Defendants would show that Plaintiff has failed to allege claims for

which relief may be granted and that dismissal is therefore proper under Federal Rule of Civil

Procedure 12(b)(6).

## II.

## RULE 12(b)(6) MOTION TO DISMISS

### A.    Standard for Dismissal under Rule 12(b)(6).

Plaintiff has failed to state a claim for which relief can be granted.  Accordingly, his lawsuit

is ripe for dismissal under Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a

complaint should be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*,

355 U.S. 41, 45-46 (1957).  Under this standard, a court may dismiss a complaint if the plaintiff

cannot possibly prevail on his or her claims.  *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.

1986); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1973).  Although the Rule 12(b)(6) standard is

stringent, "the mere fact that a standard is stringent does not suggest that it can never be met."

*Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 927 (5th Cir. 1988).

**PAGE 2**

**B.      Claims Under 42 U.S.C. § 1983 Should Be Dismissed.**

Plaintiff alleges that Defendants are liable under 42 U.S.C. § 1983, stating in his Original Complaint as follows:

15.      Bruce Christian violated Plaintiff's civil and Constitutional rights by striking him in the back with a paddle, by paddling him with such force that he caused serious injury, and by paddling him without parental consent. These violations were a direct and proximate cause of Plaintiff's injuries.

16.      A policy, practice, and/or custom of Sharyland Independent School District proximately caused the above-described violation of Plaintiff's civil and Constitutional rights. Specifically, Sharyland I.S.D.'s policy, practice, and or custom to paddle students, to inadequately train students [*sic*], and, upon information and belief, to paddle students without parental consent.

(Ex. A at 3.) These allegations fail to state a claim under 42 U.S.C. § 1983 and should therefore be dismissed.

The United States Supreme Court has explicitly refused to address whether corporal punishment may give rise to an independent federal cause of action to vindicate substantive rights under the United States Constitution. *Ingraham v. Wright*, 430 U.S. 651, 659 n. 12 (1977). The Fifth Circuit Court of Appeals, however, has concluded it does not. *See Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243, 1245 (5th Cir. 1984) (*citing Ingraham v. Wright*, 525 F.2d 909, 917 (5th Cir. 1976) (en banc), *aff'd on other grounds*, 430 U.S. 651 (1977)). The Fifth Circuit explained its rationale in its opinion in *Fee v. Herndon*, a copy of which is submitted for the Court's review as Exhibit C:

Our precedents dictate that injuries sustained incidentally to corporal punishment,

**PAGE 3**

irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions. The rationale for this rule, quite simply, is that such states have provided all the process constitutionally due. Specifically, states that affirmatively proscribe and remedy mistreatment of students by educators do not, by definition, act 'arbitrarily,' a necessary predicate for substantive due process relief. That is to say, the Constitution is not a criminal or civil code to be invoked invariably for the crimes or torts of state educators who act in contravention of the very laws designed to thwart abusive disciplinarians.

900 F.2d 804, 808 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990). The court in *Fee* went on to hold that because Texas has civil and criminal laws in place to proscribe educators from abusing their students and further provides students with adequate post-punishment relief, no substantive due process concerns are implicated in excessive discipline cases because no arbitrary state action exists. *Id.* at 810.

*Fee* is directly controlling in the instant case and clearly establishes that Plaintiff cannot bring suit under 42 U.S.C. § 1983 under the facts of this case. Accordingly, dismissal is proper under Rule 12(b)(6).

## B.   Defendant Christian, in His Individual Capacity, Entitled to Qualified Immunity.

Defendant Bruce Christian, to the extent he is sued in his individual capacity, would also show that he is entitled to qualified immunity as to Plaintiff's claims against him under 42 U.S.C. § 1983. Specifically, Defendant Christian would argue that he is immune because Plaintiff has not alleged facts showing violation of his clearly established constitutional rights.

The doctrine of qualified immunity shields an official performing discretionary functions from liability for civil damages under section 1983 so long as the official's conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have been aware. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Although the central issue in many qualified immunity cases is whether a particular constitutional right was "clearly established" at the time of the alleged violation, the threshold issue in this case is whether a constitutional violation has been alleged at all.

As discussed above, the United States Supreme Court has explicitly refused to address whether corporal punishment may give rise to an independent federal cause of action to vindicate substantive rights under the United States Constitution, and the Fifth Circuit has expressly concluded that it does not. *See Ingraham*, 430 U.S. at 659 n. 12; *Fee*, 900 F.2d at 808. In the Fifth Circuit, it is clearly established that injuries caused by corporal punishment cannot give rise to a claim under 42 U.S.C. § 1983 in Texas. Defendant Christian, to the extent he is sued in his individual capacity, is therefore entitled to qualified immunity, and dismissal of Plaintiff's claims against him under 42 U.S.C. § 1983 is proper under Rule 12(b)(6).

### C.    Plaintiff's State Law Claims Should Be Dismissed.

Plaintiff also alleges claims for assault and battery and negligence, stating in his Original Complaint as follows:

17.    Bruce Christian's paddling of Mark Crawford constituted assault and battery.

18.    Plaintiff's consent was ineffective because he was a minor, and his parents did not give consent.

19.    In the alternative, Plaintiff did not consent to being struck in the back (rather than the buttocks) or to being struck with such force that he suffered severe injury.

**PAGE 5**

20.     Bruce Christian was negligent in his paddling of Mark Crawford. He was negligent in hitting him in the back, rather than the buttocks, in hitting him with the edge of the paddle, and in striking with too much force. Said negligence proximately caused Plaintiff's damages.

(Ex. A at 3-4.) Plaintiff's claims for assault and battery are expressly barred by the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE ANN. ch. 101 (Vernon 2000), for the reasons set forth below.

A school district is a "governmental unit" for purposes of the Texas Tort Claims Act. *Id.* at § 101.001(3)(B) (Vernon 2000). The Texas Tort Claims Act provides for a waiver of governmental immunity for injuries arising out of the operation or use of motor vehicles, and injuries arising out of a condition or use of tangible property. *Id.* at § 101.021 (Vernon 2000). With respect to a school district, however, the legislature provided that immunity is not waived except as to claims arising from the use of motor vehicles. *Id.* at § 101.051 (Vernon 2000). Moreover, no claim may be brought against a governmental unit "arising out of assault, battery, false, imprisonment, or any other intentional tort, *including a tort involving disciplinary action by school authorities.*" *Id.* at § 101.057 (Vernon 2000) (emphasis added). Absent a waiver of immunity as expressed in the Texas Tort Claims Act, no cause of action against the school district could exist. *See, e.g., Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978).

To the extent that Plaintiff brings claims for assault and battery and negligence against the School District or against Defendant Christian in his official capacity, such claims are clearly barred by these Defendants' entitlement to sovereign immunity, as Plaintiff has failed to allege facts showing waiver of these Defendants' sovereign immunity under the Texas Tort Claims Act. Specifically, Plaintiff has failed to allege facts showing that Plaintiff's alleged injuries arose from

**PAGE 6**

the use of a motor vehicle. Even had Plaintiff alleged use of a motor vehicle, Plaintiff's claims are expressly barred by Texas Civil Practice and Remedies Code section 101.057 as this is a suit "involving disciplinary action by school authorities."

WHEREFORE, PREMISES CONSIDERED, Bruce Christian, individually and in his official capacity, and Sharyland Independent School District, Defendants, pray that this Court enter an order dismissing all of Plaintiff's claims under 42 U.S.C. § 1983 as to all Defendants with prejudice and dismissing all of Plaintiff's claims for assault and battery and negligence as to Defendant Bruce Christian, to the extent he is sued in his official capacity, and as to Defendant Sharyland Independent School District, and for any other relief either at law or in equity to which Defendants may show themselves to be justly entitled.

Signed on October 19, 2000.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas  78521
Telephone:  (956) 541-1846
Facsimile:  (956) 541-1893


By: _____
      George C. Kraehe
      State Bar No. 00792631
      USDC Adm. No. 19355


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing DEFENDANTS' RULE 12(b)(6) MOTION FOR PARTIAL DISMISSAL has on October 19, 2000, been forwarded via certified mail, return receipt requested to:

Michael R. Cowen, P.C.
765 E. 7th Street, Suite A
Brownsville, Texas  78520


_____
George C. Kraehe


**PAGE 8**

Case 1:00-cv-00151    Document 1    Filed in TXSD on 10/10/2000    Page 9 of 28

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

MARK CRAWFORD §

V. §

BRUCE CHRISTIAN, in his Individual § 
And Official Capacities, and §
SHARYLAND INDEPENDENT §
SCHOOL DISTRICT §

CIVIL ACTION NO. _____

**B-00-151**

JURY DEMANDED

United States District Court
Southern District of Texas
RECEIVED

**OCT 02 2000**

Michael N. Milby, Clerk of Court

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Mark Crawford, Plaintiff, and files this his Plaintiff's Original Complaint. For cause of action, Plaintiff would show unto the Honorable Court as follows:

### PARTIES

1.  Plaintiff Mark Crawford is an individual.

2.  Defendant Bruce Christian is an individual and a citizen of Texas. He may served with process at his residence, 2002 Anacua Circle, Edinburg, Texas 78539.

3.  Defendant Sharyland Independent School District is a governmental entity and a citizen of Texas. It may be served with process by serving the President of the school board, or by serving the superintendent, Dr. Sandra Reed.

### VENUE AND JURISDICTION

4.  This Court possesses federal question jurisdiction because Plaintiff is bringing a claim under 42 U.S.C. § 1983.



EXHIBIT

A

Blumberg No. 5119

5. Venue is proper in the Southern District of Texas because all events giving rise to Plaintiff's claim occurred in the district, and because both Defendants reside in the district.

## FACTS

6. On September 23, 1997, Plaintiff was a minor and a student at Sharyland High School.

7. Plaintiff's parents had never given consent for the school to paddle or give other corporal punishment to Plaintiff.

8. On September 23, 1997, Sharyland Independent School District had a policy, practice, and/or custom of paddling students.

9. On September 23, 1997, Bruce Christian was employed by Sharyland Independent School District.

10. Despite this policy, practice, and/or custom, Bruce Christian did not receive proper training in how to paddle a student without causing injury.

11. On September 23, 1997, Bruce Christian paddled Plaintiff.

12. When he paddled Plaintiff, he struck him in the back, rather than on the buttocks.

13. This blow to Plaintiff's back caused severe injuries, including herniated discs at L4-L5 and L5-S1.

14. Upon information and belief, Bruce Christian had improperly hit other children on the back with a paddle. However, even after these prior incidents, he received no reprimand or instruction on proper paddling techniques.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983

15.    Bruce Christian violated Plaintiff's civil and Constitutional rights by
striking him in the back with a paddle, by paddling him with such force
that he caused serious injury, and by paddling him without parental
consent. These violations were a direct and proximate cause of Plaintiff's
injuries.

16.    A policy, practice, and/or custom of Sharyland Independent School
District proximately caused the above-described violation of Plaintiff's
civil and Contitutional rights. Specifically, Sharyland I.S.D.'s policy,
practice, and or custom to paddle students, to inadequately train students,
and, upon information and belief, to paddle students without parental
consent.

## SECOND CAUSE OF ACTION

### COMMON LAW ASSAULT AND BATTERY

17.    Bruce Christian's paddling of Mark Crawford constituted assault and
battery.

18.    Plaintiff's consent was ineffective because he was a minor, and his parents
did not give consent.

19.    In the alternative, Plaintiff did not consent to being struck in the back
(rather than the buttocks) or to being struck with such force that he
suffered severe injury.

damages, attorney's fees, costs of court, prejudgment interest, and postjudgment interest.

Respectfully Submitted,

MICHAEL R. COWEN , P.C.
765 E. 7th Street, Suite A
Brownsville, Texas 78520
(956) 541-4981
(956) 504-3674 (FAX)

Michael R. Cowen, P.C.
Federal ID No. 19967
State Bar No. 00795306

AO 440 (Rev. 10/93) Summons in a Civil /

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____
_____

☐ Returned unexecuted: _____
_____
_____

☐ Other (specify): _____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
Date

_____
Signature of Server

_____
Address of Server

DELIVERED THIS __4th__ DAY OF _October 2000_

BY _PROFESSIONAL CIVIL PROCESS_     Ms. Castr

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

C 440 (Rev. 10/93) Summons in a Civil A:

# United States District Court

---------- DISTRICT OF ----------

MARK CRAWFORD

### SUMMONS IN A CIVIL CASE

V.

CASE NUMBER:

BRUCE CHRISTIAN, in his Official
Capacities and SHARYLAND
INDEPENDENT SCHOOL DISTRICT

B-00-151

TO: (Name and address of defendant)

Sharyland Independent School District
By serving the President of the School Board
or Superintendent, Dr. Sanda Reed
1106 Shary Road
Sharyland, Tx.

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Michael R. Cowen
MICHAEL R. COWEN, P.C.
765 E. 7th Street, Suite A
Brownsville, Tx. 78520

answer to the complaint which is herewith served upon you, within **twenty (20)** days after
nce of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
inst you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
sonable period of time after service.

**Michael N Milby, Clerk**

RK

DATE    10/2/00

DEPUTY CLERK



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
RECEIVED

**OCT 1 8 2000**

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| MARK CRAWFORD, | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | B-00-151 |
| BRUCE CHRISTIAN, in his Individual and | § | (JURY REQUESTED) |
| Official Capacities and | § | |
| SHARYLAND INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| *Defendants.* | § | |

## DEFENDANTS' ORIGINAL ANSWER

TO THE HONORABLE U.S. DISTRICT COURT:

COME NOW Bruce Christian, individually and in his official capacity, and Sharyland Independent School District, Defendants, and file this their Original Answer and would respectfully show unto the Court the following:

### I.
### ORIGINAL ANSWER

1.       Defendants deny all of Plaintiff's allegations except to the extent expressly admitted herein.

2.       Defendants admit to the allegations set forth at paragraphs 1 and 2 of Plaintiff's Original Complaint.

3.       Defendants admit to the allegations set forth at Paragraph 3 of Plaintiff's Original Complaint to the extent and only to the extent that it is alleged that it is a governmental entity and may be served with process by serving the President of the School Board or by serving the superintendent.



EXHIBIT
B

PAGE 1

4.     Defendants admit to the allegations set forth at paragraphs 4 through 6 of Plaintiff's Original Complaint.

5.     Defendants deny the allegations set forth at paragraphs 7 and 8 of Plaintiff's Original Complaint.

6.     Defendants admit to the allegations set forth at Paragraph 9 of Plaintiff's Original complaint.

7.     Defendants deny the allegations set forth at Paragraph 10 of Plaintiff's Original Complaint.

8.     Defendants admit to the allegations set forth at Paragraph 11 of Plaintiff's Original Complaint to the extent and only to the extent that it is alleged that Defendant Bruce Christian paddled Plaintiff.  Defendants expressly deny that Defendant Bruce Christian paddled Plaintiff on September 23, 1997.

9.     Defendants deny the allegations set forth at paragraphs 12 through 25 of Plaintiff's Original Complaint and specifically deny that Plaintiff has alleged any claim for which relief may be granted or that Plaintiff is entitled to any relief of any kind whatsoever.

## II.
## AFFIRMATIVE DEFENSES

10.     Plaintiff is not entitled to attorney's fees because Plaintiff is not a prevailing party; to the contrary, Defendants herein are entitled to their attorney's fees under 42 U.S.C. § 1983 because Plaintiff's action has no arguable basis in law or fact, is frivolous, and/or is brought in bad faith.

11.     Defendants are entitled to sovereign immunity.  Defendants have not waived their right to sovereign immunity.

4.      Defendants admit to the allegations set forth at paragraphs 4 through 6 of Plaintiff's Original Complaint.

5.      Defendants deny the allegations set forth at paragraphs 7 and 8 of Plaintiff's Original Complaint.

6.      Defendants admit to the allegations set forth at Paragraph 9 of Plaintiff's Original complaint.

7.      Defendants deny the allegations set forth at Paragraph 10 of Plaintiff's Original Complaint.

8.      Defendants admit to the allegations set forth at Paragraph 11 of Plaintiff's Original Complaint to the extent and only to the extent that it is alleged that Defendant Bruce Christian paddled Plaintiff.  Defendants expressly deny that Defendant Bruce Christian paddled Plaintiff on September 23, 1997.

9.      Defendants deny the allegations set forth at paragraphs 12 through 25 of Plaintiff's Original Complaint and specifically deny that Plaintiff has alleged any claim for which relief may be granted or that Plaintiff is entitled to any relief of any kind whatsoever.

## II.
## AFFIRMATIVE DEFENSES

10.      Plaintiff is not entitled to attorney's fees because Plaintiff is not a prevailing party; to the contrary, Defendants herein are entitled to their attorney's fees under 42 U.S.C. § 1983 because Plaintiff's action has no arguable basis in law or fact, is frivolous, and/or is brought in bad faith.

11.      Defendants are entitled to sovereign immunity.  Defendants have not waived their right to sovereign immunity.

12.     Plaintiff cannot recover directly or indirectly from Defendants because the Texas Tort Claims Act and the laws of the State of Texas do not allow Plaintiff's state law claims, and thus Defendants' sovereign immunity has not been waived.

13.     Defendants hereby invoke the statutory limits on liability and damages set forth in the Texas Tort Claims Act, chapter 101 of the Texas Civil Practice and Remedies Code, including those set forth at sections 101.023, 101.024, 101.025, and 101.026 of the Texas Civil Practice and Remedies Code.

14.     Defendants would further invoke all defenses and/or limitations authorized under the Texas Tort Claims Act, including, but not limited to, the defenses and/or limitations set forth at sections 101.051, 101.055, 101.056, 101.057, 101.062, 101.101, and 101.106 of the Texas Civil Practice and Remedies Code.

15.     Defendants would further assert that Plaintiff's state law claims are expressly barred by sections 101.051, 101.055, 101.056, 101.057, 101.062, 101.101, and 101.106 of the Texas Civil Practice and Remedies Code.

16.     Defendants would further assert that Plaintiff's claims for punitive or exemplary damages are expressly barred by section 101.024 of the Texas Civil Practice and Remedies Code.

17.     Defendants would further assert that they may not be sued and are not liable because they are entitled to immunity, including absolute and/or qualified and/or official and/or judicial and or legislative and/or "quasi-judicial" immunity, from all damages, including tort damages.

18.     Defendants would further assert that any loss or damages allegedly sustained by Plaintiff at the time, place, and occasion mentioned in Plaintiff's Original Complaint were caused, in whole or in part, or were contributed to, by the negligence, want of care, or intentional conduct of Plaintiff, and not by any negligence or fault or want of care on the part of these Defendants, and

PAGE 3

Defendants would therefore invoke the doctrine of comparative responsibility.

19.    In the alternative, Defendants would show that Plaintiff's suit was not brought within the limitations period authorized under Texas Civil Practice and Remedies Code section 16.003.

## III.
## RESERVATION

20.    Without waiving the foregoing denials and affirmative defenses, but still insisting upon the same for further answer if any need be necessary, and as separate defenses, Defendants reserve the right to file any and all cross-actions, third-party actions, counter-claims, motions, and discovery as they may deem proper.  Defendants hereby request trial by jury.

WHEREFORE, PREMISES CONSIDERED, Bruce Christian, individually and in his official capacity, and the Sharyland Independent School District, Defendants herein, pray that upon final trial and hearing hereof, Plaintiff take nothing by his suit, that these Defendants recover all costs incurred herein, and that Defendants have such other and further relief, at law or in equity, to which they may show themselves to be justly entitled.

Signed on October 15, 2000.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893


By: _George C. Kraehe_____
     George C. Kraehe
     State Bar No. 00792631
     USDC Adm. No. 19355


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing DEFENDANTS'
ORIGINAL ANSWER has on October 15, 2000, been forwarded via certified mail, return receipt
requested to:

Michael R. Cowen, P.C.
765 E. 7th Street, Suite A
Brownsville, Texas 78520


_George C. Kraehe_____
George C. Kraehe


**PAGE 5**

CVISPDF - www.fastio.com

Tapp's theory, because it does not refer to any previous pleading in the case. It is, in any event, much more plausible to infer that the district court's denial of Rule 35 relief responded to both pending motions because both motions predated the order. Tapp's speculation fails to anchor Judge Bunton's amended judgment to the strictures of Rule 35.

Jumper contends alternatively that the court was "reconsidering" his timely filed Rule 35 motion or that it responded to the letter from his mother, but applicable law does not sustain jurisdiction on either basis. The filing of a timely motion for reduction of sentence does not extend the jurisdiction of the district court to re-examine or adjust its position *after denying* the motion. *See United States v. Counter,* 661 F.2d at 376. Related to and reinforcing this principle, federal district courts have no jurisdiction to entertain motions for reconsideration of a Rule 35 denial of relief, unless the motion to reconsider is filed within 120 days from the date the conviction became final. Here, there were no timely motions for reconsideration. *United States v. Hetrick,* 644 F.2d 752, 756 (9th Cir.1980); *see also United States v. McIntosh,* 566 F.2d 949, 951 (5th Cir.1978) ("The Federal Rules of Criminal Procedure do not provide for a motion for rehearing from the denial of a Rule 35 motion"). Even if Jumper's mother's letter is construed as a subsequent motion for reduction, it was not filed timely, so the district court had no jurisdiction to grant it. *See United States v. Counter,* 661 F.2d at 376.

Both defendants try to make arguments based on the fact that neither of their letters was file-stamped by the district court on the date it was received (though the date on each letter shows that it was written within the 120–day limit). They contend that without the file stamp we cannot be sure exactly when the district court actually received their letters. This argument is self-defeating: if their letters were not "filed" within the 120–day period, then their motions would not be timely and the court would have lacked any jurisdiction to consider them.

Not only does Rule 35 afford no ground for the district court's action, but it possessed no inherent power to reduce a legal sentence after the 120–day period specified in Rule 35(b) had passed. *See United States v. Henry,* 709 F.2d 298, 306–09 (5th Cir.1983) *(en banc).*

Because the district court lacked jurisdiction to reduce the defendants' sentences after it had once denied their Rule 35 motions and no other Rule 35 motion was filed within the 120–day time limit, we do not reach the question whether the court failed to rule on the motions within a "reasonable" time. *See United States v. Mendoza,* 565 F.2d 1285 (5th Cir.), *modified,* 581 F.2d 89 (5th Cir.1978) *(en banc).*

For the foregoing reasons, we must *GRANT* the Writ of Mandamus, directing the district court to *VACATE* its "Order on Rule 35 Motion" dated February 8, 1989 in the case of appellee Jumper, and its "Third Amended Judgment and Commitment Order" entered April 25, 1989 in the case of appellee Tapp.



Ronald Lee FEE and Wife, Nancy Lee Fee, Individually and as Next Friends of Tracy John Fee, a Minor, Plaintiffs–Appellants,

v.

Joseph Milton HERNDON, et al., Defendants–Appellees.

No. 89–2828.

United States Court of Appeals, Fifth Circuit.

May 9, 1990.

Parents of a special education student who allegedly received excessive corporal punishment by the school's principal brought a § 1983 action against the school district and various educators, including


EXHIBIT
C
Blumberg No. 5119

the special education teacher who allegedly failed to intervene in the corporal punishment. Pendent state-law tort claims were also attached to the suit. The United States District Court for the Southern District of Texas, Hugh Gibson, J., granted defendants' motion to dismiss for failure to state a claim, and parents appealed. The Court of Appeals, Jerry E. Smith, Circuit Judge, held that: (1) Texas law afforded adequate post punishment civil and criminal remedies, and (2) Texas law did not impose upon the teacher a duty to intervene in the corporal punishment.

Affirmed.

**1. Civil Rights** ⬥234

A § 1983 complaint must state specific facts, not simply legal and constitutional conclusions.   42 U.S.C.A. § 1983.

**2. Federal Courts** ⬥763

Standard of review to be applied in dismissal of federal or state claims for failure to state a claim is same as that exercised by trial court: it must appear to certainty that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.   Fed.Rules Civ.Proc. Rule 12(b)(6), 28 U.S.C.A.

**3. Federal Courts** ⬥794

In reviewing dismissal of federal or state claims for failure to state a claim, Court of Appeals may not go outside pleadings and must accept all well-pleaded facts as true, viewing them most favorably to plaintiffs.   Fed.Rules   Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**4. Constitutional Law** ⬥278.5(6)
**Schools** ⬥176

Reasonable corporal punishment of student is not at odds with due process clause and does not constitute arbitrary state action.   U.S.C.A. Const.Amend. 14.

**5. Constitutional Law** ⬥278.5(6)

Injuries sustained incidentally to corporal punishment, irrespective of severity of these injuries or sensitivity of student, do not implicate due process clause if forum state affords adequate postpunishment civil or criminal remedies for student to vindi-

cate legal transgressions.   U.S.C.A. Const. Amend. 14.

**6. Constitutional Law** ⬥278.5(5)
**Schools** ⬥176

Where special education student allegedly received excessive corporal punishment, but state remedies—both criminal and civil—were available in Texas and proscribed excessive use of corporal punishment against students, substantive component of due process clause was not implicated.   U.S.C.A. Const.Amend. 14.

**7. Schools** ⬥147

Texas law did not impose upon teacher duty to intervene in allegedly excessive corporal punishment administered by fellow educator.   V.T.C.A.,   Education   Code § 21.912(b).

---

Gregory B. Enos, Burwell & Enos, Texas City, Tex., for plaintiffs-appellants.

Carla Cotropia, Robert Davee, Galveston, Tex., for Herndon.

Ronnie B. Arnold, Daryl G. Dursum, Coats, Yale, Holm & Lee, Houston, Tex., for Disd, et al.

Appeal from the United States District Court for the Southern District of Texas.

Before KING, GARWOOD, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

A sixth grade special-education student became disruptive during classroom instruction, prompting the use of corporal punishment by the school's principal to restore discipline. The parents, Ronald and Nancy Fee, maintain that the principal beat their emotionally disturbed child so excessively, however, that the student was forced to remain in psychiatric rehabilitation for months. The parents further allege that they incurred large medical costs as a consequence of the hospitalization.

The plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 against the school district and various educators, averring that the fourteenth amendment's sub-

stantive due process guarantee operates to ban excessive corporal punishment in public schools. Pendent state-law tort claims were attached to this civil rights suit to raise charges of negligence and excessive force. Indisputably, however, state remedies—both criminal and civil—are available in Texas and proscribe the excessive use of corporal punishment against students, including emotionally handicapped children. That being so, our precedents instruct that the substantive component of the due process clause, though selectively applied in other contexts, is inoperative under the facts herein presented.

We adhere to this circuit's rule that no arbitrary state action exists, by definition, where states affirmatively impose reasonable limitations upon corporal punishment and provide adequate criminal or civil remedies for departures from such laws. Accordingly, we conclude that defendants here, all of whom allegedly acted in contravention of Texas's criminal or civil laws, have not implicated federal substantive due process considerations, irrespective of the argued capriciousness of the corporal punishment imposed. Thus, federal constitutional relief is not among the plaintiffs' available remedies, and consequently we affirm.

## I.

Tracy Fee attended special-education classes within the defendant Dickinson Independent School District. The few relevant facts not disputed by the litigants can be reduced succinctly to the following: (1) Tracy attended sixth grade at a public school within the district; (2) he had a documented history of aggressive behavioral problems; (3) he attended special classes for emotionally handicapped children; and

(4) he received corporal punishment from the school's principal after his teacher sent him to the principal's office for misbehaving in class. Excluding this narrow area of accord, the facts are dramatically at odds.

School officials downplay the extent of the student's injuries and focus upon his behavioral problems. The Fees, in contrast, portray a brutal beating of their son by the principal, Joseph Herndon, which was witnessed passively by his teacher, Suzanne Lahr. School officials admit that the principal paddled Tracy three times on the buttocks to serve as punishment for his disruptive behavior during a history class, but they insist that the punishment comported with official school policy, which provides for *reasonable* corporal punishment.[1]

The defendants further profess that the use of corporal punishment by school officials was agreed to expressly by the mother through a special-education consent form.[2] Any aggravated mental or physical injury, they maintain, was self-inflicted by Tracy, as he aggressively resisted punishment and thrashed about on the principal's floor. They also reject the assertion that Tracy's teacher, who accompanied her student to the principal's office, witnessed any use of excessive force against Tracy.

The Fees allege that Tracy's injuries first became evident to them shortly after his return from school, where he complained of pain and having been beaten by the principal. They called the sheriff's department, and a police officer took pictures of the welts and scrapes on the child's body. The sheriff's department thereafter investigated the incident, but no criminal action was instituted against any defendant.

---

1. The official policy in effect at Dickinson's Dunbar Middle School provides, "Reasonable corporal punishment is permitted in order to preserve an effective educational environment, free from disruption." This general mandate is elaborated upon later in this same policy statement:

   Corporal punishment shall be reasonable and moderate and may not be administered maliciously or for the purpose of revenge. Such factors as the size, age, and condition of the student, the type of instrument to be used, the amount of force to be used, and the part of the body to be struck shall be considered before administering any corporal punishment.

2. About three weeks prior to this paddling incident, Nancy Fee signed a special-education authorization form providing, among other things, that school officials could administer three paddle swats to Tracy for misbehavior.

The parents assert that their son was hospitalized as a consequence of the beating and forced to spend a total of six months in a psychiatric ward; the total cost of this medical care approached $90,000. Further, Tracy has never fully recovered, we are told, as he has displayed even more pronounced antisocial behavior since the "brutal" beating. The parents admit, however, that Tracy's emotional problems predated this paddling incident.

The Fees filed a section 1983 action against Tracy's principal and teacher, the school district, and Dickinson's superintendent and trustees. The natural persons were sued in their official and individual capacities. Suit was originally commenced in state court and subsequently was removed. The complaint raises allegations of negligence, gross negligence, and excessive force with respect to the principal and teacher. Additionally, all defendants are charged with violating the student's substantive due process rights under the fourteenth amendment.

The defendants unsuccessfully moved for summary judgment at an earlier phase of this litigation. However, the district court warned the plaintiffs at that time that section 1983 does not provide for what the state-court petition terms "responded superior" [sic] liability for the negligent acts of educators. Accordingly, the court granted the Fees an opportunity to amend the complaint so that they could present their "best case." The Fees amended their complaint but not to the district court's satisfaction: The court held that the plaintiffs' "conclusory allegations" once again failed to premise liability upon grounds other than *respondeat superior*.

The defendants renewed their motion for summary judgment, which the district court construed alternatively as a Fed.R. Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. The court disposed of all claims, except the state-law excessive-force charge directed at the principal only. It thereafter declined to exercise pendent jurisdiction over this residual tort dispute and remanded that sole remaining claim.

The Fees appeal, maintaining, first, that the district court should not have dismissed the state-law action against the teacher who passively witnessed the corporal punishment. They also argue that the substantive component of the due process clause proscribes the abusive treatment of students, especially emotionally handicapped students, in public schools and thus affords to them a federal constitutional cause of action here.

## II.

### A.

[1–3] A section 1983 complaint must state specific facts, not simply legal and constitutional conclusions. *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986); *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir.1985). The standard of review is to be applied to a dismissal of federal or state claims pursuant to rule 12(b)(6) is the same as that exercised by the trial court: It must appear to a certainty that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339 (5th Cir.1989); *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir.1989); *Angel*, 793 F.2d at 739. We may not go outside the pleadings and must accept all well-pleaded facts as true, viewing them most favorably to the plaintiffs. *Partridge v. Two Unknown Officers*, 791 F.2d 1182, 1185–86 (5th Cir.1986); *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir.1985).

### B.

"Paddling of recalcitrant children has long been an accepted method of promoting good behavior and instilling notions of responsibility and decorum into the mischievous heads of school children." *Ingraham v. Wright*, 525 F.2d 909, 917 (5th Cir.1976) (en banc), *aff'd*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). This common law principle, in fact, predates the American Revolution. *Id.*, 430 U.S. at 661, 97 S.Ct. at 1407. However, coincidentally with the genesis of corporal punishment, reasonable limits traditionally have been imposed upon

student discipline so as not to give teachers a license to commit state-sanctioned child abuse. Specifically, post-punishment civil or criminal remedies have targeted public school teachers who departed from the disciplinary norms defined by statute or the common law. *See* Comment, *Corporal Punishment in the Public Schools: The Effect of the Eighth and Fourteenth Amendments,* 29 Baylor L.Rev. 549, 556 n. 61 (1977) (citing nineteenth-century criminal convictions in Texas of educators who abused the use of corporal punishment).

This dispute presents the question of whether the federal Constitution independently shields public school students from excessive discipline, irrespective of state-law safeguards. In *Ingraham,* the Supreme Court declared that twenty swats to a student, which removed him from school for days with bruises and disabled his arm for a week, did not violate *procedural* due process guarantees. 430 U.S. at 682, 97 S.Ct. at 1418. That is, while "corporal punishment in public schools implicates a constitutionally protected liberty interest," *id.* at 672, 97 S.Ct. at 1413, the state may impose sufficient post-punishment safeguards to satisfy procedural due process concerns, *id.* at 682, 97 S.Ct. at 1418. Unfortunately, the *Ingraham* Court declined to address whether teacher discipline can be so capricious as to violate the amorphous substantive due process guarantees inherent in the fourteenth amendment. *Id.* at 659 n. 12, 97 S.Ct. at 1406 n. 12.

[4]   We have stated that corporal punishment in public schools "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning." *Woodard v. Los Fresnos Ind. School Dist.,* 732 F.2d 1243, 1246 (5th Cir.1984). Thus, *reasonable* corporal punishment is not at odds

with the fourteenth amendment and does not constitute arbitrary state action. Consistently with this caselaw, Texas has authorized educators to impose a *reasonable* measure of corporal punishment upon students when necessary to maintain school discipline,[3] and the state affords students post-punishment criminal or civil remedies if teachers are unfaithful to this obligation.[4]

[5]   Our precedents dictate that injuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause *if* the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions. The rationale for this rule, quite simply, is that such states have provided all the process constitutionally due. Specifically, states that affirmatively proscribe and remedy mistreatment of students by educators do not, by definition, act "arbitrarily," a necessary predicate for substantive due process relief. That is to say, the Constitution is not a criminal or civil code to be invoked invariably for the crimes or torts of state educators who act in contravention of the very laws designed to thwart abusive disciplinarians.

In *Cunningham v. Beavers,* 858 F.2d 269 (5th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1343, 103 L.Ed.2d 812 (1989), a six-year-old kindergarten student received a total of five paddle swats, causing severe bruising on her buttocks. The child missed six days of school, and her injuries were deemed to be abusive by social welfare workers and her doctor. We held that no deprivation of substantive due process had occurred, because Texas provides adequate state criminal and tort remedies for any excessive punishment that

---

3.   *See* Tex.Penal Code Ann. § 9.62 (Vernon 1974) (use of force, but not deadly force, justified in educator-student context); Tex.Educ.Code Ann. § 21.912(b) (Vernon 1987) (qualified immunity for educators imposing corporal punishment upon students).

4.   If the measure of force applied to a student becomes excessive, common law tort remedies

are available for damages. *See Barr v. Bernhard,* 562 S.W.2d 844 (Tex.1978); *Hogenson v. Williams,* 542 S.W.2d 456 (Tex.Civ.App.—Texarkana 1976, no writ). Texas also proscribes excessive corporal punishment with its criminal code. *See* Tex.Penal Code Ann. §§ 22.01, 22.04 (Vernon 1989 & Supp.1990) (injuries to children).

may have been imposed upon the student. *Id.* at 272. *Cunningham*, we conclude, is dispositive here.[5]

[6] In this case, the student's mother authorized the use of corporal punishment against Tracy to cure his disruptive classroom behavior.[6] The litigants agree that the principal and the teacher attempted to discipline the child for his in-class disruptions and that official school policy tolerates only reasonable corporal punishment. Although the injuries are alleged to have been severe, the student's substantive due process guarantees have not been violated under the rationale of *Cunningham*, as Texas does not allow teachers to abuse students with impunity and provides civil and criminal relief against educators who breach statutory and common law standards of conduct. Although the sheriff's department investigated the charges raised, no criminal prosecution commenced here; however, the possibility of state-law civil relief remains.

This circuit has consistently avoided any inquiry into whether five, ten, or twenty swats invokes the fourteenth amendment:

> We think it a misuse of our judicial power to determine, for example, whether a teacher has acted arbitrarily in paddling a particular child for certain behavior or whether in a particular instance of misconduct five licks would have been a more appropriate punishment than ten licks. We note again the possibility of a civil or criminal action in state court against a teacher who has excessively punished a child.

*Ingraham*, 525 F.2d at 917. Thus, we have avoided having student discipline, a matter of public policy, shaped by the individual predilections of federal jurists rather than by state lawmakers and local officials. We find no constitutional warrant to usurp classroom discipline where states, like Texas, have taken affirmative steps to protect their students from overzealous disciplinarians.

The plaintiffs claim, however, that the viability of a section 1983 suit should not depend upon the adequacy of state remedies available against educators and, secondly, they assert that prisoners within this circuit enjoy more constitutional protection than that afforded innocent school children. The Fees admonish this circuit for adhering to an "overly rigid" rule, one that allegedly does not contemplate egregious cases of student discipline, such as physical disfigurement or, as here, severe emotional injury. They underscore their displeasure with *Cunningham* and other precedent by suggesting that teachers could mutilate or torture students in the pursuit of discipline without federal constitutional relief.

We reject these emotionally charged criticisms as misplaced. The plaintiffs do not, and in fact cannot, claim that they lack adequate post-punishment remedies at the state level, under the facts as alleged in this case. The fact that they perceive federal damage recovery to be potentially more generous (Title 42 U.S.C. § 1988 authorizes prevailing parties to secure attorneys' fees from constitutional violators.) is irrelevant to our inquiry and does not make state relief inadequate.

It is an overstatement to suggest that students can suffer extreme injury at the hands of educators without recourse. Admittedly, under *Cunningham* their choice of forum may be restricted to state courts. However, it is important to note that the *Cunningham* rule has been crafted to operate in the narrow context of student discipline administered within the public schools of states that authorize only reasonable discipline and, further, provide post-punishment relief for departures from its law. The inquiry, predictably, would differ in states that authorize neither.

The cases relied upon by the Fees to underscore our alleged inflated and incon-

---

5.  *See also Woodard,* 732 F.2d 1243 (three spanks to student, despite instruction from parent to teachers *not* to administer corporal punishment, does not violate substantive due process).

6.  We note, however, that parental consent to corporal punishment is not constitutionally required. *Ingraham,* 430 U.S. at 662 n. 22, 97 S.Ct. at 1408 n. 22 (citing *Baker v. Owen,* 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)).

sistent concern for prisoners are also distinguishable. These cases implicate constitutional provisions other than the fourteenth amendment, principally the fourth amendment's unreasonable-search-and-seizure provision or the eighth amendment's cruel-and-unusual-punishment clause. However, the *Ingraham* Court has expressly rejected the application of the eighth amendment to student punishment, 430 U.S. at 664, 97 S.Ct. at 1408–09, and the paddling of recalcitrant students does not constitute a fourth amendment search or seizure. None of these prisoner cases is premised upon the substantive protections afforded by the fourteenth amendment's due process clause.

The Fees' argument that their federal civil rights claim is independent in and of itself and should be decoupled from any state-law inquiry also misconstrues settled constitutional principles. Federal constitutional claims regularly turn upon state law: State law, for example, defines who shall be deemed a "final policymaker" for purposes of a section 1983 action,[7] and it defines "property" worthy of compensation under the fifth amendment's taking clause.[8] Further, the doctrine of substantive due process focuses expressly upon the *arbitrariness of state action.* Thus, to dismiss the law of the forum state as irrelevant, as the Fees would have us do, is to misapply that doctrine.

We harbor no opinion as to the severity of the student's injuries in this case. We hold only that since Texas has civil and criminal laws in place to proscribe educators from abusing their charges, and further provides adequate post-punishment relief in favor of students, no substantive due process concerns are implicated because no arbitrary state action exists. Accordingly, we affirm the dismissal of the section 1983 claims asserted against all defendants.[9]

## C.

[7] The Fees maintain that Lahr had a legal duty under state law to intervene in the paddling of their son and that her failure to do so constitutes actionable negligence. Curiously, they rely upon Tex. Educ.Code Ann. § 21.912(b) (duties and liability of professional employees) for the proposition that the district court erroneously dismissed the tort action against the teacher. Section 21.912(b) states, however, that

[n]o professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, *except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in*

---

7. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 124–25, 108 S.Ct. 915, 924–25, 99 L.Ed.2d 107 (1988).

8. *See, e.g., Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 518–19, 107 S.Ct. 1232, 1259–60, 94 L.Ed.2d 472 (1987) (Rehnquist, C.J., dissenting) ("we have evaluated takings claims by reference to the units of property defined by state law"); *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1003, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) ("That intangible property rights protected by state law are deserving of the protection of the Taking Clause has long been implicit in the thinking of this Court.").

9. The Fees argue in the alternative that a strict application of *Cunningham* would not bar a § 1983 suit against the school district, supervisor, and trustees, since no post-punishment relief is available against them under state law. Assuming, without deciding, this to be true, the Fees still fail to state facts demonstrating that

these government defendants fostered an official policy or custom to batter children, as required by § 1983.

No official state or school policy is offered, for example, to show that excessive punishment is permitted by teachers, nor do the plaintiffs state any facts to suggest that excessive punishment occurred within the school district as a matter of well-established custom. In fact, no other beating incidents are specifically pled or identified within the school district. Thus, no constitutionally-proscribed conduct on the part of the higher-ranking officials has been demonstrated. Further, the district court properly concluded that the Fees cannot maintain *respondeat superior* liability, as argued here, against the district for the negligent acts, if any, committed by the principal. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

*bodily injury to students.* [Emphasis added.]

This statutory language defines the partial immunity enjoyed by Texas public school teachers; significantly, it does not create any duty on the part of teachers to intervene in the administration of corporal punishment by fellow educators. Further, no Texas court has yet crafted such a duty.

Nevertheless, the Fees maintain that the Texas Supreme Court has construed section 21.912(b) in such a fashion that a cause of action against the classroom teacher exists here. In *Barr v. Bernhard,* 562 S.W.2d 844 (Tex.1978), a student was injured on a school-sponsored farm when a calf dislodged a roof-support, leading to the partial collapse of the roof and the student's injuries. The plaintiffs in that case tried to pierce section 21.912(b)'s partial immunity by suggesting that the statute exempts *all negligence* resulting in bodily injury to students.

The *Barr* court rejected such a broad interpretation, holding instead that immunity under state law terminates in instances where a teacher *acts negligently in disciplining students* and as a result, causes bodily injury. *Id.* at 849; *accord Hopkins v. Spring Ind. School Dist.,* 736 S.W.2d 617, 618–19 (Tex.1987). In *Barr,* the student's injuries were not incurred as a consequence of discipline, and thus no tort recovery was available against school officials or the district.

Lahr does not contest the plaintiffs' interpretation of *Barr* and section 21.912(b); she does, however, object vigorously to the suggestion that such authority imposes a duty upon her to intervene in the corporal punishment administered by fellow educators. Lahr submits that her activities were limited to directing Tracy to the principal's office for misbehaving and recommending corporal punishment pursuant to the parental consent form.

It is undisputed that Lahr did not engage in the paddling of the student. Accordingly, her liability, if warranted at all, flows from a duty to intervene in the disciplinary activities of fellow educators if and when the punishment became "excessive." No

such duty to intervene, however, exists under Texas law, and we decline the invitation *to impose new duties under the state's tort law.*

We conclude that the Fees have failed to state an actionable negligence claim against the teacher under existing Texas law; thus, only an excessive-force cause of action with respect to the school's principal remains. As all federal claims fail, and a single pendent state claim remains, the district court properly exercised its discretion when it remanded the residual tort action to state court. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988) (where only pendent state claims remain, remand is discretionary). As the district court noted, the plaintiffs are free to renew their theory of negligence in that forum. We express no view as to the merits of that claim.

AFFIRMED.



**Douglas MORGAN, et al.,
Plaintiffs–Appellants,**

v.

**The CITY OF DeSOTO, TEXAS, et al.,
Defendants–Appellees.**

**No. 89–1727.**

United States Court of Appeals,
Fifth Circuit.

May 10, 1990.

Arrestees brought a § 1983 action against city, police officers, and shopping center managers, claiming their arrests in the shopping center's parking lot were illegal. The United States District Court for the Northern District of Texas, A. Joe Fish, J., rendered summary judgment for all defendants, and plaintiffs appealed. The Court of Appeals, Reavley, Circuit Judge,